Citation Nr: 1434279 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 11-00 129 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Waco, Texas


THE ISSUE

Entitlement to service connection for a disability manifested by fatigue, to include as due to an undiagnosed illness.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

Matthew Blackwelder, Counsel




INTRODUCTION

The Veteran served on active duty training from July 1989 to November 1989 and on active duty from December 1990 to May 1991 (including in Southwest Asia from January 1991 to May 1991). 

This appeal comes to the Board of Veterans' Appeals (Board) from an April 2010 rating decision. 

In August 2011, the case was remanded for evidentiary development, including scheduling the Veteran for examinations. The claim was remanded again in December 2013 to obtain an addendum opinion to ensure that the Board's requested development was adequate. This opinion was obtained. Thus, the Board is satisfied that there has been substantial compliance with the remand directives and appellate review may continue. See Stegall v. West, 11 Vet. App. 268 (1998). 


FINDINGS OF FACT

1. The Veteran served in the Southwest Asia theater of operations during the Persian Gulf War.

2. The Veteran does not have either an undiagnosed illness or medically unexplained multisymptom illness manifested by fatigue.


CONCLUSION OF LAW

The criteria for entitlement to service connection for a disability manifested by fatigue, to include as due to undiagnosed illness, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2013).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Service Connection

In seeking VA disability compensation, a Veteran generally seeks to establish that a current disability results from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131. "Service connection" basically means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 C.F.R. § 3.303. 

Service connection may also be granted on a presumptive basis for a Persian Gulf Veteran who exhibits objective indications of qualifying chronic disability, including resulting from undiagnosed illness, that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 21, 2016, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.A. § 1117 (West 2002); 38 C.F.R. § 3.317(a)(1) (2013).

The term "Persian Gulf Veteran" means a veteran who served on active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317(e)(1). The "Southwest Asia theater of operations" refers to Iraq, Kuwait, Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(e)(2). The Persian Gulf War means the period beginning on August 2, 1990, and ending on the date thereafter prescribed by Presidential proclamation or by law. 38 U.S.C.A. § 101(33) (West 2002); 38 C.F.R. § 3.3(i) (2013). 

In the case of claims based on undiagnosed illness under 38 U.S.C.A. § 1117, unlike those for "direct service connection," there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). 

The record shows the Veteran served in the Southwest Asia theater of operations from January 1991 to May 1991. Thus, she is a Persian Gulf War Veteran within the meaning of the applicable statute and regulation. See 38 C.F.R. § 3.317. 

In August 2009, the Veteran wrote a letter in which she asserted that after returning from the Persian Gulf region she began to experience symptoms such as fatigue, and she requested service connection for the condition. In her formal claim, received in September 2009, she stated that she had experienced fatigue from approximately 1994 to the present.

Service treatment records show that a medical examination in March 1991did not find any disability, and the Veteran's separation physical in June 1992 was normal, other than a benign flow murmur. On a medical history survey completed in June 1992, the Veteran stated that she was in good health and did not mention any problems with fatigue.

At a VA primary care treatment session in September 2009, the Veteran specifically denied experiencing any fatigue; and at a psychiatric intake assessment in December 2012, she again denied experiencing any excessive fatigue.

Nevertheless, given the Veteran's complaints about fatigue, the Board remanded her claim in June 2011 to obtain a medical opinion. The examiner was asked to determine whether the Veteran had a disability manifested by fatigue and to consider if she had chronic fatigue syndrome as defined in 38 C.F.R. § 4.88a. 

Following a physical examination in June 2012, the VA examiner concluded that the Veteran did not have chronic fatigue syndrome. It was explained that for VA purposes, a diagnosis of chronic fatigue syndrome required: a) a new onset of debilitating fatigue, severe enough to reduce daily activity to 1ess than 50 percent of the usual level for at least 6 months; b) the exclusion by history, physical examination, and laboratory tests, of all other clinical conditions that may produce similar symptoms; and c) six or more of the following: acute onset of the condition, low grade fever, non-exudative pharyngitis, palpable or tender cervical or axillary lymph nodes, generalized muscle aches or weakness, fatigue lasting 24 hours or longer after exercise, headaches (of a type, severity or pattern that is different from headaches in the pre-morbid state), migratory joint pains, neuropsychological symptoms, and sleep disturbance.

The examiner noted the Veteran reported fatigue ongoing since 1997/1998, but explained that her fatigue appeared to be a symptom and not a diagnosis. The examiner added that no undiagnosed illness was found. 

While the examiner essentially answered the necessary questions, out of an abundance of caution, the Board remanded the claim in December 2013 to ensure that the Veteran's complaints of fatigue were not a symptom of an undiagnosed illness. 

In April 2014, the examiner noted that in June 2012 he had found that the Veteran did not meet the criteria for chronic fatigue syndrome, and did not have an undiagnosed illness of any kind. The examiner acknowledged that the Veteran experienced fatigue, but observed that she was being treated for anxiety and depression at that time, and explained that fatigue was known to be a symptom of both anxiety and depression. As a result, the examiner concluded that the Veteran's fatigue was most likely to be a result of her depression and anxiety and was neither an undiagnosed illness, nor otherwise related to her service in the Southwest Asia theater of operations.

It is noted that service connection for major depressive disorder and an anxiety disorder was denied in a May 2014 rating decision that has not yet been appealed.

Here, the Veteran has reported experiencing fatigue in the years since returning from service in the Persian Gulf region. However, while she, as a lay person, is competent to report what comes to her through her senses, such as fatigue, she lacks the medical training and expertise to provide a complex medical opinion such as determining whether a symptom such as fatigue is a component of either an undiagnosed illness or a medically unexplained multisymptom illness. See Layno v. Brown, 6 Vet. App. 465 (1994), Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). As such, her statements alone are insufficient in this case to diagnose a chronic disease manifested by fatigue.

The Board has obtained the opinion of a medical professional to assess the Veteran's symptoms, and also obtained an addendum opinion to ensure that the Board's questions were adequately addressed. The examiner's opinions were grounded in the evidence of record and were fully explained. Additionally, no competent evidence has been received that in any way refutes or undermines the examiner's opinion. As such, the examiner's two opinions are found to constitute highly probative evidence and are given great weight. 
 
Given this conclusion, the evidence is squarely against a finding of service connection for fatigue, and the Veteran's claim is therefore denied.

II. Duties to Notify and Assist 

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided by a letter in October 2009. Additionally, neither the Veteran, nor her representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Here, the Veteran's service treatment records, private treatment records, and VA treatment records have all been obtained. Additionally, the Veteran was offered the opportunity to testify at a hearing before the Board, but she declined.

The Veteran was also provided with a VA examination and the Board followed-up with additional questions for the examiner to address to ensure that the questions needed to adjudicate this claim were fully answered. The Board finds that the opinions that were obtained are adequate for rating purposes, as the examiner had a full and accurate knowledge of the Veteran's disability and contentions, and grounded the opinions in the medical literature and evidence of record. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Moreover, neither the Veteran nor her representative has objected to the adequacy of any of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 
 
As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal. 


ORDER

Service connection for a disability manifested by fatigue, to include as due to undiagnosed illness, is denied.


____________________________________________
MICHELLE L. KANE 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs