Citation Nr: 1761223 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-49 297 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUE

Entitlement to an initial rating in excess of 70 percent for service-connected posttraumatic stress disorder with depression (PTSD).


REPRESENTATION

Veteran represented by: Vietnam Veterans of America


WITNESS AT HEARINGS ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

T. Berryman, Associate Counsel

INTRODUCTION

The Veteran had active service from June 1979 to September 1979, from July 1980 to December 1981, and from January 2003 to May 2004, to include service in Southwest Asia.

This case initially came before the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines, Iowa.

In connection with this appeal, the Veteran testified at a hearing before a Decision Review Officer in March 2010 and before the undersigned Veterans Law Judge in June 2012. Transcripts of the hearings are of record.

This case has been adjudicated on multiple occasions, including a Board remand in 2012, and a decision in 2014, a Joint Motion for Remand (JMR) by the Court of Appeals for Veterans Claims (Court), Board remands in 2015 and 2016.

In August 2017, the RO granted a total disability rating based on individual unemployability (TDIU) due to service-connected conditions. This represents a complete grant of her appeal in regard to this claim. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997). As such, this issue is no longer before the Board. 

In March 2016, the Board remanded the Veteran's claim for further development. The Board is satisfied that there was at the very least substantial compliance with its remand directives. See Dyment v. West, 13 Vet. App. 141, 146-157 (1999). 


FINDING OF FACT

The Veteran's PTSD has not been shown to cause total occupational and social impairment.



CONCLUSION OF LAW

The criteria for an initial rating in excess of 70 percent for PTSD have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was met, and neither the Veteran, nor her representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of the claims at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). VA treatment records and private treatment records have been obtained. Additionally, the Veteran testified at a hearing before the Board in June 2012.

The Veteran was also provided VA examinations and neither the Veteran, nor her representative, has objected to the adequacy of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 
 
As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

Increased Ratings
 
Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

The Veteran was granted service connection for her PTSD by a June 2008 rating decision and initially rated at 30 percent effective October 31, 2005, the date her service-connection claim was received by VA. In a February 2012 rating decision, the Veteran was granted a 50 percent rating effective October 31, 2005. In a June 2014 rating decision, the Veteran was granted a 70 percent rating effective October 31, 2005. 

Under the General Rating Formula for Mental Disorders, a 70 percent evaluation is assigned when a veteran's mental disability causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); or an inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 100 percent rating is assigned when a veteran's mental disability causes total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; danger of hurting self or others; intermittent inability to perform activities of living (including maintenance of minimal hygiene); disorientation to time or place; or, memory loss for names of close relatives, occupation, or own name. Id. 

When rating a mental disorder, VA must consider the frequency, severity, and duration of the Veteran's psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. The rating agency must assign a rating based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of the examination. When rating the level of disability from a mental disorder, the rating agency must consider the extent of social impairment, but cannot assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126. 

Furthermore, the specified factors for each incremental rating are examples, rather than requirements, for a particular rating. The Board will not limit its analysis solely to whether the Veteran exhibited the symptoms listed in the rating criteria. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Indeed, the symptoms listed under § 4.130 are not intended to serve as an exhaustive list of the symptoms that VA may consider but as examples of the type of degree of symptoms, or the effects, that would warrant a particular rating. Mauerhan, 16 Vet. App. at 442 (2002). The Veteran's actual symptomatology, and resulting social and occupational impairment, will be the primary focus when assigning a disability rating for a mental disorder, and the Veteran may qualify for a particular rating by demonstrating the particular symptoms associated with that percentage, or other symptoms of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013).

Also relevant to the Board's analysis is the Global Assessment of Functioning (GAF) score assigned to the Veteran, which is a scale that indicates the psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Carpenter v. Brown, 8 Vet. App. 240 (1995); Richard v. Brown, 9 Vet. App. 266 (1996); American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV); 38 C.F.R. § 4.130. While the veteran's GAF score is not itself determinative of the most appropriate disability rating, the Board must consider it when assigning the appropriate disability rating for the veteran. VAOPGCPREC 10-95 (1995), 60 Fed. Reg. 43186 (1995).

GAF scores ranging from 31 to 40 indicate some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). GAF scores ranging from 41 to 50 indicate serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). GAF scores ranging from 51 to 60 indicate moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). GAF scores ranging from 61 to 70 indicate some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well and has some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994); 38 C.F.R. § 4.130.

The competent evidence of record, to include the Veteran's treatment records, VA examination reports, and private medical records do not establish findings consistent with a rating in excess of 70 percent. 

The Veteran's treatment records show that she was assessed GAFs ranging from 45 to 60 between November 2006 and October 2007.

In October 2007, the Veteran was afforded a VA examination. She reported that she lived with her husband, one adopted child, and two foster children. She reported that she was a full time student at a community college. She reported that she goes out with a friend about once per week. She reported that she saw her family members fairly regularly. The VA examiner reported that the Veteran was capable of managing all of her activities of daily living. The VA examiner assessed the Veteran with a GAF of 58.

The Veteran's treatment records show that she in January 2009, she was pleasant and fully alert and oriented. She was assessed a GAF of 57. In March 2009, she was cooperative with grossly intact memory. She was assessed a GAF of 57. In May 2009, she continued to be assessed a GAF of 57.

In October 2009, the Veteran was afforded a VA examination. She reported that she was in the process of divorcing her husband. She reported that she lived with her 14 year old daughter across the street from her husband, but that she still got along with him. She continued to attend classes at community college and worked part time since 2008. She reported going out occasionally with coworkers. The VA examiner assessed the Veteran with a GAF of 57.

The Veteran's treatment records show that in December 2009, she was fully alert and oriented. She continued to work part-time. She was assessed a GAF of 60. In May 2010, she reported that she continued to work and go to school. She also spent time with her daughter and granddaughter.

In January 2012, a VA examiner reviewed the Veteran's claims file and assessed the Veteran with a GAF of 48. The VA examiner noted that the Veteran continued to work part-time and completed her Associates of Arts degree at community college.

The Veteran's treatment records show that she was assessed GAFs between 41 and 50 from May 2012 through December 2012.

At the June 2012 Board hearing, the Veteran testified that she had no friends of family around, but that she saw her children when they came to visit. She testified that she had one friend from work.

In May 2013, the Veteran was assessed a GAF of 39. However, in January 2015, she continued to work part-time.

In August 2015, the Veteran was afforded a VA examination. She reported that she continued to work part-time and attend college classes. She reported having work friends. She reported recently buying a house. 

In December 2015, the Veteran reported that she had reconciled with her family. In January 2016, she was assessed a GAF of 60, and in March 2016, she was assessed a GAF of 70.

In May 2016, the Veteran was afforded a VA examination. She reported that she lived with her 20 year old son and babysat her grandchildren about six times per year. She reported having one friend. She reported she was able to complete all of her activities of daily living independently. She reported that she continued to work part-time at the same job for the last seven years and attend college classes.

In June 2016, the Veteran reported that she continued to work and that family interactions were more tolerable. In October 2016, she reported that her family relationships were improving and she was assessed a GAF of 70.

As described, the Veteran has clearly experienced psychiatric symptomatology as a result of her PTSD. However, the record does not establish that the Veteran's PTSD has resulted in total occupational and social impairment at any time during the period on appeal. She has consistently worked and attended college classes. She maintains relationships with her family. She maintained having at least one friend, in addition to maintaining relationships with some coworkers. While she has had a divorce, she reported maintaining a relationship with her ex-husband. While she has been assessed a GAF as low as 39, she continued to work part-time and maintained her relationships. In addition, she typically was assessed GAFs at or above 50, and most recently was assessed a GAF of 70, which was consistent with only mild symptoms. At no time has a VA examiner indicated that the Veteran's PTSD resulted in total occupational and social impairment.

While the Veteran has undoubtedly experienced both social and occupational impairment, this is to be expected with a 70 percent rating, which contemplates symptomatology such as an inability to establish and maintain effective relationships. Having reviewed the evidence of record, it simply cannot be concluded that the Veteran's PTSD results in total occupational impairment and total social impairment.

Accordingly, a rating in excess of 70 percent for the Veteran's PTSD is denied.


ORDER

An initial rating in excess of 70 percent for PTSD is denied.



____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs