Citation Nr: 1761199 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-26 626 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to a rating greater than 10 percent for a low back disability.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and Observer, L.G.


ATTORNEY FOR THE BOARD

R. Connally, Associate Counsel


INTRODUCTION

The Veteran served on active duty with the United States Navy from August 1984 to July 2004.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a September 2008 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia, that continued a 10 percent rating for the low back disability. Subsequently, the case was transferred to the RO in Roanoke, Virginia.

In November 2012, the Veteran testified at a Board hearing before the undersigned Acting Veterans Law Judge (AVLJ); a transcript of the hearing is associated with the claims file. Additional evidence was received at the hearing and was accompanied by a waiver of RO consideration. See 38 C.F.R. § 20.1304(c).

The Board previously considered this appeal in April 2017, and remanded these issues for further development in order to conduct another VA spine examination and request additional VA and private treatment records. That development was completed, and the case returned to the Board for further appellate review. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The issue of TDIU entitlement was inferred by the Board as part and parcel of the appeal for an increased rating. Rice v. Shinseki, 22 Vet. App. 447 (2009).


FINDINGS OF FACT

1. Throughout the rating period, the Veteran's low back disability was manifested, at worst, by forward flexion no less than 65 degrees with pain, but not by ankylosis, by incapacitating episodes of intervertebral disc syndrome having a total duration of at least two weeks but less than 4 weeks during a 12 month period, or by an associated neurologic impairment that has not already been separately rated.

2. Service-connected disabilities do not render the Veteran unable to secure or follow substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for a low back disability have not been met. 38 U.S.C. § 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5243-5242 (2017).

2. The criteria for entitlement to TDIU have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.655, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2017). For an increased-compensation claim, the US Court of Appeals of Veterans Claims (the Court) has held that § 5103(a) required, at a minimum, that VA notify the claimant that, to substantiate a claim, the medical or lay evidence must show a worsening or increase in severity of the disability. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (2009). Such notice was provided in the letter sent to the Veteran in May 2008. The Veteran was also provided a VCAA notice regarding development of his total disability based on individual unemployability claim in August 2015. Based on the foregoing, adequate notice was provided to the Veteran prior to the transfer and certification of this case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), and no further notice is needed under VCAA.

Next, VA has a duty to assist a veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159; see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim"). Here, service records have been obtained, as have records of VA and private treatment. Based on the foregoing, the Board finds that VA has met its duty to assist with regard to records development.

The Veteran was afforded VA examinations with respect to his claim in May 2008, May 2012, and December 2015. During those examinations, the VA examiners conducted physical examinations of the Veteran with diagnostic testing, were provided the claims file for review, took down the Veteran's history, considered the lay evidence presented, laid factual foundations for the conclusions reached, and reached conclusions and offered opinions based on history and examinations that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion).

The Veteran appeared at a hearing before the undersigned Acting Veterans Law Judge in November 2012. In Bryant v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) essentially requires that any Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. 23 Vet. App. 488 (2010). These requirements consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Id. During the hearing, the Veterans Law Judge did not explicitly note the elements of the claim that were lacking to support the Veteran's claim. However, the Veteran demonstrated actual knowledge of this information and presented testimony discussing his symptoms and regarding why he believed a higher rating was warranted. See Dalton v. Nicholson, 21 Vet. App. 23 (explaining that actual knowledge is established by statements or actions by the claimant or the claimant's representative that demonstrate an awareness of what was necessary to substantiate his or her claim). In light of his answers, the Veteran is not shown to be prejudiced on this basis. During the hearing, the Veterans Law Judge sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claim. Accordingly, the Veteran is not shown to be prejudiced on this basis. Moreover, the Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. The actions by the undersigned satisfy the obligations imposed by 38 C.F.R. § 3.103.

All necessary development has been accomplished; therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). In addition to the evidence discussed above, the Veteran's statements in support of the claim are also of record. The Board has carefully considered such statements, and concludes that no available outstanding evidence has been identified. Additionally, the Board has reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. For these reasons, the Board finds that the duties to notify and assist the Veteran in the development of this claim have been met, so that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

As noted in the Introduction, the Board previously remanded this claim in April 2017. The Board instructed the AOJ to request additional private and VA treatment records, schedule a VA examination, and readjudicate the claims on appeal with consideration of the additional evidence associated with the claims folder. Since that time, VA issued a supplemental statement of the case that considered the additional, new evidence. Furthermore, the Board finds substantial compliance is present with the April 2017 VA examination because the examiner considered motion of the back with weight bearing, non-weight bearing, active, and passive motion, and found that she could not speculate as to the impact of such factors on any additional functional impairment. Essentially, the examiner found that there was no change in movement due to any of the testing results mentioned above. As a result, the Board finds substantial compliance with its previous remand instructions, and has properly continued with the foregoing decision. Substantial compliance, rather than strict compliance, is required. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that there must be substantial compliance with the terms of a Court or Board remand); see also Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders). 

Rating for a Low Back Disability

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found, however. This practice is known as "staged" ratings." Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. 

The Veteran's low back disability is rated under Code 5243, for intervertebral disc disease. Either of two sets of criteria may be applied. The disc disease may be rated based on the cumulative amount of time in which the condition was incapacitating over the prior 12 months, or based upon the degree of limitation of motion. 38 C.F.R. § 4.71a. An "incapacitating episode" for purposes of totaling the cumulative time is defined as "period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note 1.

Although the Veteran has reported being incapacitated on occasion, there is no record of any order or directive from a doctor requiring bed rest. Post service treatment records reflect no periods of bed rest or total incapacitation. The Veteran has competently and credibly reported episodes of increased symptoms. However, in the absence of any medical statement indicating that bed rest and regular treatment were required during those periods, the definition of "incapacitating episode" has not been met at any time during the appellate period. VA examiners have verified such. Evaluation under these criteria is therefore not appropriate.

The Veteran is therefore evaluated under the alternative criteria of Diagnostic Code 5242, for degenerative arthritis of the spine, indicated by use of a hyphenated Code of 5243-5242. This Code provides that the provisions of Code 5003, for degenerative arthritis generally, are also potentially applicable; however, as a compensable evaluation is assigned under the Code specific to the affected body part, Code 5003 is not applied. 38 C.F.R. § 4.71a, Code 5003. 

Under the alternative General Rating Formula for Diseases and Injuries of the Spine, the disability is evaluated with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. A 10 percent evaluation is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating requires thoracolumbar spine forward flexion greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less, or for favorable ankylosis of the entire thoracolumbar spine. Unfavorable ankylosis of the thoracolumbar spine warrants a 50 percent evaluation, and unfavorable ankylosis of the entire spine is rated 100 percent disabling. 38 C.F.R. § 4.71a.

In rating musculoskeletal disabilities, the Board must consider whether a rating is warranted based on functional loss due to pain or due to other factors including weakness, fatigability, incoordination, or pain on movement of a joint. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995).

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, normal extension is zero to 30 degrees, normal left and right lateral flexion is zero to 30 degrees, and normal left and right lateral rotation is zero to 30 degrees. 38 C.F.R. § 4.71a, Code 5237, Note 2. Further, all measured ranges of motion should be rounded to the nearest five degrees. 38 C.F.R. § 4.71a, Code 5237, Note 4. Ankylosis is a condition in which an entire spinal segment is immobile and fixed in position. Unfavorable ankylosis exists where the fixation is in flexion or extension, and the ankylosis results in one difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; and/or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) is considered favorable ankylosis. 38 C.F.R. § 4.71a, Code 5239, Note 5.

Throughout the appellate period, the Veteran has alleged the presence of severe low back pain which is markedly limiting his movement and activities. He has reported radiating pain to the legs, passing out from pain, and limitation of range of movement and endurance in activity. A treating chiropractor and the Veteran's friends have submitted statements reiterating his allegations. He avers that such warrants a higher evaluation than the currently assigned 10 percent rating.

However, objective testing does not corroborate the subjective reports, or at least does not reflect the degree of functional impairment reported by the Veteran. The Board accepts the competent and credible reports of pain, but finds that the impact of such on actual functioning does not warrant an increased evaluation. Repeated measurement of range of motion show such to be in excess of 65 degrees in flexion; the sole reference to anything less comes as a lay estimate where pain began, made by the undersigned, Veteran, and representative at the hearing based on reports of where pain began, and not where function stopped or lessened. Moreover, examiners have repeatedly considered the impact of the Veteran's pain on his actual function, and have found that such does not increase the impairment with repeated movement or over time. At best, they state that with things such as use over time or with weight bearing, it would require speculation to determine any additional functional loss, and objective testing simply fails to indicate the presence of any such beyond the noted initial losses.

The Board acknowledges that the Veteran experiences pain, and that such impacts his functioning. Unfortunately, his reports of such impact appear exaggerated when compared to the repeated measurements taken with examination and treatment. It is certainly possible, even likely, that the extent of impairment with flare-ups is greater, but the record does not indicate that such are frequent, long, or severe enough to alter the overall disability picture. In April 2017, for example, they occurred twice a week, but lasted only 10 minutes. In April 2015, they occurred only two or three times a month. The Board additionally notes that neurological symptoms of right leg radiculopathy are separately evaluated, and not part of this appeal.

No increased evaluation is warranted under the Schedule, which fully contemplates the Veteran's low back symptoms and complaints. 38 C.F.R. § 3.321; Thun v. Peake, 22 Vet. App. 111 (2008).

TDIU Consideration

The Veteran contends that he is entitled to a finding of total disability due to individual unemployability. During the November 2012 Board hearing, the Veteran implied that his low back disability was the reason he was fired from his last job. Total disability ratings for compensation may be assigned where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16. Marginal employment is not considered substantially gainful employment. 38 C.F.R. § 4.16(a). 

Substantially gainful employment means, essentially, that the work provides income above the poverty level established by the United States Department of Commerce, without benefit of protected family employment or a sheltered workshop. 38 C.F.R. § 4.16(a). There is no requirement that employment be in a certain field or provide a certain standard of living or income level beyond the poverty level. Factors to be considered in determining entitlement to TDIU include but are not limited to employment history, educational achievement, and vocational attainment. Age is not a factor. 38 C.F.R. § 4.16.

Basic schedular eligibility for TDIU is shown where a Veteran is in receipt of compensation for a disability rated 60 percent disabling, or for multiple disabilities combining to a 70 percent rating, with one condition rated at least 40 percent disabling. Certain disabilities, to include all those affecting a single body system, may be considered one disability. 38 C.F.R. § 4.16(a). If a Veteran does not meet these standards, TDIU may still be granted; it is the established policy of VA that all Veterans who are unemployable shall be rated totally disabled. However, such cases must be referred to the Director, Compensation and Pension Service, for extra-schedular consideration. 38 C.F.R. § 4.16(b).

At no time during the appellate period has the Veteran met the schedular eligibility requirements. 38 C.F.R. § 4.25. The Veteran is service-connected for the following: sleep apnea (50 percent, effective August 1, 2008); low back disability (10 percent, effective August 1, 2008); tinnitus (10 percent, effective August 1, 2008); right lower extremity radiculopathy associated with low back disability (10 percent, effective April 24, 2017), and; hypertension (zero percent, effective April 30, 2008). The combined rating of these service-connected disabilities is only 60 percent, and none are eligible for consideration as a qualifying single disability under 38 C.F.R. § 4.16(a). The question, then, is whether referral to the Director is warranted; to warrant referral, unemployability must be shown. 

Unfortunately, the Board must find that the evidence of record does not establish that the Veteran cannot secure or follow substantially gainful employment due to his service-connected disabilities. All VA examiners found the Veteran was able to work; these opinions are not binding on the Board, but are informative. The Board has considered the opinions, but focuses primarily on their discussion of functional capacities. 

The limitations on function and employment imposed by doctors due to the Veteran's service-connected disabilities are primarily designed to keep him from performing heavy labor. He can, generally, continue to perform more sedentary tasks. The reported time lost from work in recent years, of one to two weeks, is not exceptionally large. He has demonstrated a continued ability to concentrate and focus, shown by his school attendance and earning of a degree in business management. Further, his main work is in the examination of records as what is effectively a fraud examiner. In short, the evidence fails to show that the Veteran, given his level of education, career achievement, and disability, cannot securer and follow substantially gainful employment of some type. 

Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply, and the claim for entitlement to TDIU must be denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).


ORDER

A rating greater than 10 percent for a low back disability is denied.

Entitlement to TDIU is denied.



_________________________________________________
WILLIAM H. DONNELLY
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs